# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP1493 |
| COMPLETE TITLE: | Donald Christ, individually and as Special Administrators of the Estate of Gail P. Christ, deceased, Jacqueline Radosevich, individually and as Special Administrator of the Estate of Gary Radosevich, deceased, Mary Jane Beaulieu, individually and as Special Administrator of the Estate of William Beaulieu, deceased, Paul Clark, individually and as Special Administrator of the Estate of Sharon A. Clark, deceased, Betty Grosvold, individually and as Special Administrator of the Estate of Victor M. Grosvold, deceased, Dianne Pederson, individually and as Special Administrator of the Estate of Mae H. Heath, deceased, Carrie Duss, individually and as Special Administrator of the Estate of Mary Henneman, deceased and Arlene Christ,<br>      Plaintiffs-Appellants-Cross-Respondents,<br>Deborah Sherwood, individually and as Special Administrator of the Estate of Gerald F. Conley, deceased, Randy S. Hermundson, individually, Darlene Insteness, individually and as Special Administrator of the Estate of Robert A. Insteness, deceased, Joyce Jensen, individually, Jean M. Leskinen, individually,, Paul T. Manny, Anita Manny, Douglas Winrich, individually and as Special Administrator of the Estate of Barbara Winrich, deceased, Barbara Nelson, individually and as Special Administrator |

of the Estate of Terry Nelson, deceased, Faye Reiter,
individually, Donald Schindler, individually and Jean Ruf,
individually and as Special Administrator of the Estate of
Richard R. Ruf, deceased,
             Plaintiffs,
         v.
Exxon Mobil Corporation, Sunoco, Inc., Texaco Downstream
Properties, Inc., Four Star Oil and Gas Company, BP
Products North America, Inc. and Ashland Chemical Company
Division of Ashland, Inc.,
             Defendants-Respondents-Cross-
Appellants-Petitioners,
Shell Chemical, L.P., Cornerstone Natural Gas Company and
Shell Oil Company,
             Defendants.

---

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Summary Disposition – No citation)

---

| OPINION FILED: | June 23, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 4, 2015 |

---

SOURCE OF APPEAL:
| COURT: | Circuit |
| COUNTY: | Eau Claire |
| JUDGE: | Lisa K. Stark |

---

JUSTICES:
| CONCURRED: | |
| DISSENTED: | ROGGENSACK, C.J.,ZIEGLER, J. dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

---

ATTORNEYS:

For the defendants-respondents-cross-appellants-petitioners, there were briefs by *Dennis M. Sullivan*, *Michael A. Hughes*, *Larry Chilton*, and *Chilton Yambert Porter LLP*, Madison, and oral argument by *Dennis M. Sullivan*.

2

For the plaintiffs-appellants-cross-respondents, there was a brief by *Matthew A. Biegert*, *Michael J. Brose*, and *Doar, Drill & Skow, S.C.*, New Richmond; *Michael R. Sieben* and *Sieben Polk, P.A.*, Hastings, MN; *Richard Alexander* and *Alexander Law Group*, LLP, San Jose, CA; and *Mandy Hawes*, San Jose, CA. Oral argument by *Matthew A. Biegert*.

**2015 WI 58**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP1493
(L.C. No. 2006CV420)

STATE OF WISCONSIN        :        IN SUPREME COURT

**Donald Christ, individually and as Special Administrator of the Estate of Gail P. Christ, deceased, Jacqueline Radosevich, individually and as Special Administrator of the Estate of Gary Radosevich, deceased, Mary Jane Beaulieu, individually and as Special Administrator of the Estate of William Beaulieu, deceased, Paul Clark, individually and as Special Administrator of the Estate of Sharon A. Clark, deceased, Betty Grosvold, individually and as Special Administrator of the Estate of Victor M. Grosvold, deceased, Dianne Pederson, individually and as Special Administrator of the Estate of Mae H. Heath, deceased, Carrie Duss, individually and as Special Administrator of the Estate of Mary Henneman, deceased and Arlene Christ,**

        **Plaintiffs-Appellants-Cross-Respondents,**

**Deborah Sherwood, individually and as Special Administrator of the Estate of Gerald F. Conley, deceased, Randy S. Hermundson, individually, Darlene Insteness, individually and as Special Administrator of the Estate of Robert A. Insteness, deceased, Joyce Jensen, individually, Jean M. Leskinen, individually, Paul T. Manny, Anita Manny, Douglas Winrich, individually and as Special Administrator of the Estate of Barbara Winrich, deceased, Barbara Nelson, individually and as Special Administrator of the Estate of Terry Nelson, deceased, Faye Reiter, individually, Donald Schindler, individually and Jean Ruf, individually and as Special Administrator of**

**FILED**

**JUN 23, 2015**

Diane M. Fremgen
Clerk of Supreme Court

the Estate of Richard R. Ruf, deceased,

       Plaintiffs,

   v.

Exxon Mobil Corporation, Sunoco, Inc., Texaco
Downstream Properties, Inc., Four Star Oil and
Gas Company, BP Products North America, Inc.
and Ashland Chemical Company Division of
Ashland, Inc.,

       Defendants-Respondents-Cross-
Appellants-Petitioners,

Shell Chemical, L.P., Cornerstone Natural Gas
Company and Shell Oil Company,

       Defendants.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1   DAVID T. PROSSER, J.   This is a review of an unpublished opinion and order of the court of appeals,[1] which summarily reversed a grant of summary judgment in favor of Exxon Mobil Corp. et al., by the Eau Claire County Circuit Court, Lisa K. Stark, Judge.

¶2   The case involves the viability of certain wrongful death and survival claims.  It is part of a larger tort suit filed in 2006 by former employees and the estates and

---

[1] <u>Christ v. Exxon Mobil Corp.</u>, No. 2012AP1493, unpublished order (Wis. Ct. App. Feb. 12, 2014).

2

beneficiaries of former employees at an Eau Claire tire manufacturing plant. The tort suit alleged that the former employees' injuries and deaths resulted from their exposure to benzene in the workplace. This appeal relates to the summary judgment entered against eight plaintiffs on grounds that their claims were filed too late.

¶3 The defendants, Exxon Mobil Corp. et al.,[2] contend that the claims of these plaintiffs were not filed before the expiration of the three-year statute of limitations set forth in Wis. Stat. § 893.54(2) (2005-06). They contend that, under Wisconsin law, the plaintiffs' claims could not have accrued later than the deaths of the decedents they represent because the discovery rule in wrongful death and survival claims does not extend to "third parties," that is, parties other than the decedents. Thus, they argue, the statute of limitations began to run more than three years before any of the plaintiffs in this appeal filed their claims.

¶4 The plaintiffs counter that their claims did not accrue until they had reason to believe that the defendants were responsible for the injuries giving rise to their claims. They assert that Wisconsin's judicially created discovery rule applies to both survival claims and wrongful death claims in such a way that the claims may accrue later than a decedent's

---

[2] For the sake of simplicity, we refer to the petitioners here, collectively, as "defendants" and the respondents here, collectively, as "plaintiffs." The parties have followed these designations throughout the litigation.

death if an appropriate third party's discovery of the claim is reasonable. They argue that there is no law that limits this application of the discovery rule.

¶5 We agree with the plaintiffs and hold that the discovery rule permits the accrual of both survival claims and wrongful death claims after the date of the decedent's death. In the absence of a legislatively created rule to the contrary, claims accrue when there is a "claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." Emp'rs Ins. of Wausau v. Smith, 154 Wis. 2d 199, 231, 453 N.W.2d 856 (1990) (quoting Barry v. Minahan, 127 Wis. 570, 573, 107 N.W. 488 (1906)). These criteria are not met "until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." Borello v. U.S. Oil Co., 130 Wis. 2d 397, 411, 388 N.W.2d 140 (1986). See also Carlson v. Pepin Cnty., 167 Wis. 2d 345, 352-53, 481 N.W.2d 498 (Ct. App. 1992) ("Under the discovery rule, a cause of action accrues when the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered his injury, its nature, its cause and the identity of the allegedly responsible defendant.").

¶6 In the circumstances of this case, the applicable statute of limitations began to run when the survival claims and wrongful death claims were discovered, provided that the

plaintiffs are able to show that they exercised reasonable diligence in investigating and discovering their claims.

¶7    Given the procedural posture of this case, the plaintiffs have not yet demonstrated that their claims accrued less than three years before they filed their complaint. Accordingly, we affirm the court of appeals and remand to the circuit court for a determination as to whether the plaintiffs have satisfied the statute of limitations under our accrual rule.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶8    The relevant facts are undisputed. On July 13, 2006, multiple parties (the initial plaintiffs)[3] filed suit against multiple defendants (the initial defendants) in the Eau Claire County Circuit Court. The complaint alleged that the initial plaintiffs were employed at an Eau Claire tire manufacturing facility operated by the Uniroyal Goodrich Tire Company, Inc.[4] The complaint alleged that during the course of their employment, the initial plaintiffs were exposed to benzene and benzene-containing products. The complaint further alleged that as a result of their exposure to benzene and benzene-containing

---

[3] Three of these parties are relevant to this appeal: Arlene Christ; Donald Christ, individually and as special administrator of the Estate of Gail Christ; and Jacqueline Radosevich, individually and as special administrator of the Estate of Gary Radosevich.

[4] In the case of the Christs and Radosevich, the decedents they represented had been the ones employed at the manufacturing facility.

products, the initial plaintiffs were injured and, in some cases, died. The initial plaintiffs sought unspecified damages on the theories of negligence, strict liability, and failure to warn.

¶9 In due course, the initial defendants individually answered the complaint and denied liability for the alleged injuries. Two of the initial defendants——Hovland's, Inc. and Shell Canada, Ltd.——also filed cross-claims against certain co-defendants, leading those parties to file answers to the cross-claims as well.

¶10 On December 28, 2007, an amended complaint was filed. The amended complaint added nine parties as plaintiffs[5] and three corporations as defendants. From 2008 through 2011, various filings not pertinent to this appeal were made in the case resulting in the dismissal of certain defendants.

¶11 On March 5, 2012, the remaining defendants moved for dismissal of the complaints of eight of the plaintiffs.[6] This

---

[5] Five of the nine parties are relevant to this appeal: Mary Jane Beaulieu, individually and as special administrator of the Estate of William J. Beaulieu; Paul Clark, individually and as special administrator of the Estate of Sharon Ann Clark; Betty Grosvold, individually and as special administrator of the Estate of Victor M. Grosvold; Dianne Pederson, individually and as special administrator of the Estate of Mae H. Heath; and Carrie Duss, individually and as special administrator of the Estate of Mary Henneman.

[6] The motion to dismiss eight of the plaintiffs concerned the complaints related to the following seven deceased former employees: William Beaulieu, Gail P. Christ, Sharon Ann Clark, Victor M. Grosvold, Mae H. Heath, Mary Henneman, and Gary Radosevich (collectively, the decedents).

motion was based in part on Wis. Stat. § 893.54 (2005-06), which bars recovery for survival and wrongful death claims filed more than three years after accrual. The defendants contended that the eight plaintiffs' claims could have accrued no later than the time of the decedents' deaths, and because the decedents died more than three years prior to the filing of the complaints,[7] the plaintiffs' claims were time-barred.

¶12 On March 27, the plaintiffs filed a brief opposing dismissal. They argued that the discovery rule delayed accrual of their claims until they knew or reasonably should have known of their injuries and of the defendants' role in those injuries. They contended that, at the very least, material issues of fact remained as to when their claims accrued.

¶13 The Eau Claire County Circuit Court held a motion hearing on April 30, 2012.[8] After both sides presented their arguments, the court——expressing substantial difficulty with the state of the law——granted the motion. The court relied on Miller v. Luther, 170 Wis. 2d 429, 489 N.W.2d 651 (Ct. App. 1992), and Estate of Merrill ex rel. Mortensen v. Jerrick, 231 Wis. 2d 546, 605 N.W.2d 645 (Ct. App. 1999), to determine that

---

[7] According to the defendants, William Beaulieu died in 1997, Gail Christ died in 2002, Sharon Clark died in 2001, Victor Grosvold died in 2003, Mae Heath died in 1996, Mary Henneman died in 1995, and Gary Radosevich died in 1999. The plaintiffs have not disputed these dates.

[8] The court treated the defendants' motion to dismiss as a motion for summary judgment.

the plaintiffs' claims had accrued at death, and were therefore barred by the statute of limitations.

¶14 The court of appeals summarily reversed the circuit court's grant of summary judgment. Christ v. Exxon Mobil Corp., No. 2012AP1493, unpublished order (Wis. Ct. App. Feb. 12, 2014). The court relied on its earlier decision in Beaver v. Exxon Mobil Corp., No. 2012AP542, unpublished slip op. (Wis. Ct. App. May 9, 2013), which presented nearly identical facts with different plaintiffs. The court stated: "The discovery rule provides that the statute of limitations begins to run when the plaintiff discovers or should have discovered the injury and that the injury may have been caused by the defendant." Christ, No. 2012AP1493, at 3 (citing Doe v. Archdiocese of Milwaukee, 211 Wis. 2d 312, 335, 565 N.W.2d 94 (1997)). The court did not make a determination as to whether the plaintiffs' claims were in fact timely, but remanded the case to the circuit court for further proceedings.

¶15 The defendants moved for reconsideration of the court of appeals' decision, claiming that the circuit court already had applied the discovery rule. The court of appeals denied the motion. The defendants then petitioned this court for review, which we granted on October 6, 2014.

## II. STANDARD OF REVIEW

¶16 We are asked to review the circuit court's grant of summary judgment. "We review a decision on a motion for summary judgment independently, employing the same methodology as the circuit court." Estate of Genrich v. OHIC Ins. Co., 2009 WI 67,

8

¶10, 318 Wis. 2d 553, 769 N.W.2d 481. Making that determination in this case requires us to decide the correct legal standard for accrual for courts to apply to survival and wrongful death claims. This involves questions of law and the interpretation of statutes, both of which this court reviews de novo. State v. Williams, 2014 WI 64, ¶16, 355 Wis. 2d 581, 852 N.W.2d 467; GMAC Mortg. Corp. v. Gisvold, 215 Wis. 2d 459, 470, 572 N.W.2d 466 (1998).

¶17 We are also asked to review the court of appeals' summary disposition of this case. The court of appeals has the power to summarily reverse a circuit court's decision. Wis. Stat. § (Rule) 809.21.[9] The defendants contend, however, that the summary disposition of their appeal violated their constitutional rights. Whether a party's constitutional right was violated is a question of constitutional fact. This court's review of questions of constitutional fact follows a two-step process. State v. Jennings, 2002 WI 44, ¶20, 252 Wis. 2d 228, 647 N.W.2d 142 (citing State v. Henderson, 2001 WI 97, ¶16, 245 Wis. 2d 345, 629 N.W.2d 613). First, we accept findings of fact unless they are clearly erroneous. Id. Then, we apply constitutional principles to those facts de novo. Id.

### III. DISCUSSION

#### A. Wrongful Death and Survival Claims

---

[9] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

¶18 We begin with a brief history of the types of claims at issue in this case.[10] At common law, tort claims died if either the victim or the tortfeasor died before the victim recovered damages. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 125A, at 940 (5th ed., lawyer's ed. 1984). In addition, family members of deceased victims had no cause of action for the loss of financial support or companionship incurred as a result of the death of their relatives. Id. However, these early common law rules have since been altered.

¶19 Damages for injuries sustained by a tort victim prior to his death now survive in what is known as a survival action. In Wisconsin, statutory survival actions date back to at least 1839. See § 44, Statutes of the Territory of Wisconsin 1839. Survival actions are not new actions created by the death of the victim. They are actions that the victim would have had available to him if he had survived. See Miller, 170 Wis. 2d at 436.

¶20 Survival actions are brought by the decedent's personal representative to benefit the decedent's estate. Brown v. Chicago & Nw. Ry. Co., 102 Wis. 137, 140-42, 77 N.W. 748

---

[10] This court has discussed the history of survival and wrongful death claims many times in the past, and a full recitation of that history is not necessary here. For a more in-depth discussion of the history of these claims, see, e.g., Bartholomew v. Wisconsin Patients Compensation Fund, 2006 WI 91, ¶¶54-69, 293 Wis. 2d 38, 717 N.W.2d 216; Brown v. Chicago & Northwestern Railway Co., 102 Wis. 137, 140-42, 77 N.W. 748 (1898); Woodward v. Chicago & Northwestern Railway Co., 23 Wis. 400, 405-06 (1868).

(1898).   Statutory survival actions exist under Wis. Stat. § 895.01(1)(am), which states that "[i]n addition to the causes of action that survive at common law," certain other types of actions survive as well.   Personal injury actions seeking damages for a decedent's injuries suffered before death fall under the category of "other damage to the person" in Wis. Stat. § 895.01(1)(am)7. (formerly Wis. Stat. § 895.01(1) (1979-80)). See Wangen v. Ford Motor Co., 97 Wis. 2d 260, 310, 294 N.W.2d 437 (1980).   "An action does not abate by the occurrence of any event if the cause of action survives or continues." Wis. Stat. § 895.01(2).

¶21  Certain relatives of tort victims are now also able to bring actions for wrongful death.   Wrongful death actions were created by statute in chapter 7, Laws of 1857.   "A wrongful death claim refers to the statutory cause of action belonging to named persons for injuries suffered postdeath." Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, ¶55, 293 Wis. 2d 38, 717 N.W.2d 216.   Since 1931, wrongful death plaintiffs have been able to seek damages for loss of society and companionship. See § 2, ch. 263, Laws of 1931.[11]

---

[11] Damages for loss of society and companionship are now contained in Wis. Stat. § 895.04(4):

> Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action.  Additional damages not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the spouse, children

(continued)

¶22 Wrongful death actions are derivative tort actions. Ruppa v. Am. States Ins. Co., 91 Wis. 2d 628, 646, 284 N.W.2d 318 (1979). Thus, even though the wrongful death statute creates a "new action" and "allows a person to recover his or her own damages sustained because of the wrongful death of another," Miller, 170 Wis. 2d at 435-36, the person's right of action depends not only upon the death of another person but also upon that other person's entitlement to maintain an action and recover if his death had not occurred.

¶23 Stated differently, for a wrongful death claim to exist, the decedent must have had a valid claim for damages against the defendant at the time of his death. Id. at 439-40. See also Wis. Stat. § 895.03. If the decedent would have been barred from making a claim, the decedent's statutory beneficiary also would be barred. To illustrate, if a party signed a liability waiver before engaging in a dangerous activity and was subsequently killed while participating in that activity, the liability waiver would preclude the wrongful death claims of the decedent's statutory beneficiaries. See Ruppa, 91 Wis. 2d at 646.

¶24 Although survival actions and wrongful death actions are commonly intertwined, they are distinct. Often times, the same party will seek recovery for both survival claims and

---

or parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time of the death.

wrongful death claims.   However, a party need not seek to recover for both.   Indeed, different parties might file a wrongful death action and a survival action, respectively, for the death of one person.  See Bartholomew, 293 Wis. 2d 38, ¶59. In short, "[t]he two claims are separate claims for separate injuries that may belong to different people."  Id., ¶54.

## B. The Discovery Rule

¶25  As noted above, the court has stated that a cause of action accrues when three conditions are present: (1) a claim capable of enforcement, (2) a party against whom the claim may be enforced, and (3) a party with the right to enforce the claim.  Barry, 127 Wis. at 573.   In Hansen v. A.H. Robins Co., 113 Wis. 2d 550, 554, 335 N.W.2d 578 (1983), the court observed that "there are three points in time when a tort claim may be said to accrue: (1) when negligence occurs, (2) when a resulting injury is sustained, and (3) when the injury is discovered." Traditionally, most tort claims have been treated as accruing on the date of injury because claimants usually are aware of their injuries when they occur.   However, because tort victims sometimes are unaware of injuries when they happen, strict adherence to this general rule "can yield extremely harsh results" if a tort victim discovers his injury after the statute of limitations has run.  Id. at 556.

¶26  Hansen involved a question certified to this court by the United States Court of Appeals for the Seventh Circuit.  Id. at 551.   Kathleen Hansen had a "Dalkon Shield" intrauterine device (IUD) inserted by Dr. Fabiny in May 1974.   Near the end

13

of May 1978, she began to have significant health issues. On June 13, she visited Dr. Macken, who examined her and told her it was unlikely she had pelvic inflammatory disease (PID). On June 26, she visited Dr. Fabiny, who removed her IUD and concluded that she probably did have PID. Id. at 552-53.

¶27 On June 24, 1981, Hansen sued the IUD manufacturer——A.H. Robins Company——in federal court, seeking recovery for her injuries. Id. A.H. Robins moved for summary judgment, claiming that the three-year statute of limitations on Hansen's claim had expired. The district court concluded that Hansen had been injured sometime before June 13, 1978. Because Hansen filed suit more than three years after that date, the United States District Court granted the motion for summary judgment. Hansen appealed, and the Seventh Circuit certified a question of law to this court. Id.

¶28 In considering whether to institute a discovery rule for tort actions in Wisconsin, this court noted that "[t]here are two conflicting public policies raised by the statute of limitations: '(1) That of discouraging stale and fraudulent claims, and (2) that of allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained.'" Id. at 558 (quoting Peterson v. Roloff, 57 Wis. 2d 1, 6, 203 N.W.2d 699 (1973)). Although the prompt adjudication of tort claims is a highly desirable goal, the court continued, a discovery rule would not create an intolerable risk of defendants being subjected to stale or fraudulent claims. Id. at 559. The court noted that defendants

14

would still be protected by the requirement that plaintiffs prove their claims at trial, as well as the fact that claims would accrue when injuries were discovered or reasonably should have been discovered. Id. The court also noted that the lack of a discovery rule sometimes allowed wrongdoers to escape liability by barring meritorious claims. Id.

¶29 In what has become a landmark decision authored by Justice William Callow, a unanimous court "conclude[d] that the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions." Id. Accordingly, the court established the discovery rule for all tort claims not specifically covered by a legislatively created rule. The court stated: "tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first. All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled." Id. at 560.

¶30 Given that Hansen did not involve a death, it is not surprising that the opinion made no mention of the specific issues that now confront this court. The court did not discuss whether the injured party or decedent was the only person who could discover an injury. What it did discuss was the balance of equities, the court's power to establish when claims accrue, and the fact that other than for medical malpractice claims, "the Wisconsin statutes do not speak" to the issue. Id. at 559-60.

15

¶31 The court discussed the import of Hansen five years later in Borello. The court said that "Hansen stands for the proposition that mere knowledge of the fact of an injury and nothing more will not trigger the commencement of the period of limitations." Id. at 409. The court determined that for a claim to accrue, the plaintiff would have to discover, or in the exercise of reasonable diligence should have discovered, "not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." Id. at 411. The court noted that this approach did not change the law, but "merely look[ed] at the cause of action in a new light that is more likely to produce a just result." Id. at 421.

¶32 In short, the basis for this court's adoption of the discovery rule was, and remains, public policy. Therefore, if the legislature has not superseded the discovery rule by statute for a particular tort, the discovery rule will continue to apply to claims for that tort in a way that protects the public policy considerations set forth in Hansen and Borello.

### C. Applicability of the Discovery Rule

¶33 As a preliminary matter, we note that the parties do not dispute whether the discovery rule applies to both wrongful death claims and survival claims; both parties agree that it does. Rather, the parties differ about the manner in which the discovery rule applies——specifically, whether the rule applies to discovery by persons other than decedents. Although the parties' arguments sometimes conflate wrongful death claims and survival claims for purposes of this analysis, the different

16

characteristics of each type of claim make it appropriate to discuss them separately.   We therefore address each type of claim in turn.

### 1. Wrongful Death Claims

¶34   Eight decades ago, this court stated that wrongful death claims accrue at death.  Terbush v. Boyle, 217 Wis. 636, 259 N.W. 859 (1935).   Terbush followed George v. Chicago, Milwaukee & St. Paul Railway Co., 51 Wis. 603, 604, 8 N.W. 374 (1881), and it, in turn, was followed by Holifield v. Setco Industries, Inc., 42 Wis. 2d 750, 757, 168 N.W.2d 177 (1969). Those cases, however, were decided before Hansen's adoption of the discovery rule "for all tort actions other than those already governed by a legislatively created discovery rule." Hansen, 113 Wis. 2d at 560.

¶35  As noted, the Hansen court declared that "tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first.  All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled." Id.  Given the rigid construction of the rule in Terbush and the broad holding in Hansen, Hansen might well be read as overruling Terbush.

¶36  In this appeal, the defendants' wrongful death defense rests in part on the continuing viability of the Terbush rule. The defendants offer Genrich as evidence of "the continued force of Terbush in non-medical malpractice wrongful death cases." The relevant part of Genrich stated:

17

We acknowledge that some of our past decisions, outside of the medical malpractice context, could be interpreted to conclude that claims for damages due to wrongful death accrue on the date of the decedent's death. See, e.g., Terbush v. Boyle, 217 Wis. 636, 640, 259 N.W. 859 (1935), overruled on other grounds, Pufahl v. Williams, 179 Wis. 2d 104, 111, 506 N.W.2d 747 (1993) (interpreting a former statute of limitations consistent with an even earlier statutory provision that provided, "'every such action shall be commenced within two years after the death of such deceased person'").

Genrich, 318 Wis. 2d 553, ¶32.

¶37 The defendants' reliance on Genrich is unavailing. Genrich involved a death in a medical malpractice case. The operative statute of limitations was Wis. Stat. § 895.55(1m)(a). The spouse of the decedent sought to establish the death of the decedent as the date of accrual under Wis. Stat. § 893.54(2). The court determined that the statute did not apply in a medical malpractice case. The court's references to Terbush in Genrich were in a context distinguishing one fact situation from another. The discussion did not determine whether accrual of a wrongful death claim could occur after the decedent's death. That decision was made in Hansen and Borello.

¶38 The defendants also argue that the court of appeals in this case "scrapped the derivative nature of wrongful death claims . . . . If a beneficiary's discovery can resurrect a decedent's survival claim, then a wrongful death claim is not truly derivative. Instead, it controls the survival claim." We disagree.

¶39 Defendants concede that the discovery rule applies to wrongful death claims. They contend, however, that the

18

discovery rule applies only to decedents——that no third party is capable of discovering the necessary elements of a wrongful death and establishing its date of accrual.

¶40 We turn to an example that surfaced in oral argument to test the defendants' position. X is killed instantly by a negligent driver in a hit and run accident. X's beneficiaries have at least three years to file a wrongful death claim under Wis. Stat. §§ 895.03, 895.04, and 895.54(2). Under these hypothetical facts, X could not have brought a claim at the time of his death because he did not know the identity of the negligent driver. Thus, only a third party would be able to discover the hit and run driver's identity to facilitate a claim.

¶41 If X's personal representative or statutory beneficiary filed the claim within three years of death, there would be no dispute whatsoever about what the decedent knew at the time of death——it would not matter.

¶42 There would, however, be an issue if the personal representative or beneficiary did not file within the three-year period following the decedent's death. And there would be an issue if the personal representative or beneficiary did not discover the identity of the hit and run driver until after the three-year period.

¶43 Defendants cannot argue about how the information was discovered if it was discovered and acted upon within three years of death. They must contend that the date of accrual is always the decedent's date of death and that the three-year

19

statute of limitations may not be triggered by a later discovery.

¶44 We do not see this reasoning as consistent with the compelling policy arguments made and adopted in Hansen. Under the defendant's theory, if a deceased person's wrongful death beneficiaries did not discover the identity of the hit and run driver until a week after the three-year period ended, they would be unable to recover any of the damages enumerated in Wis. Stat. § 895.04(4), which are their damages. Conversely, the hit and run driver would be rewarded for killing the victim instead of badly injuring him, and he would not have to show that the passage of time had created difficulties in defending the case. This is not just.

¶45 We do not think the court of appeals was wrong when it concluded that a wrongful death claim for a 1980 homicide accrued when the decedent's killer was finally charged with the crime in 2009. See McIntyre v. Forbes, No. 2013AP611, unpublished slip op., ¶¶8, 10 (Wis. Ct. App. Dec. 19, 2013). And we do not think that the court of appeals was wrong here.

¶46 None of this changes the derivative nature of a wrongful death claim. A wrongful death action is a cause of action for the benefit of designated classes of relatives, "enabling them by statute to recover their own damages caused by the wrongful death of the decedent." Miller, 170 Wis. 2d at 435 (citing Brown, 102 Wis. at 140). It is a new action. Id. at 436. However, the plaintiff in a wrongful death action has no claim if the decedent would not have been able to "maintain an

20

action and recover damages" in his own right if he had not died. Wis. Stat. § 895.03. What this means is that "if death had not ensued," a deceased person would still have been alive and able to discover all the elements of the tort that resulted in his death. Thus, the beneficiary in a wrongful death action is simply recognizing and establishing a claim that is based on the claim that the decedent would have made if the decedent were still alive.

¶47 We conclude that the discovery rule continues to apply to wrongful death claims in the only way in which it reasonably can: by permitting those claims to accrue "on the date the injury is discovered or with reasonable diligence should be discovered" by the wrongful death beneficiary, "whichever occurs first." Hansen, 113 Wis. 2d at 560.

### 2. Survival Claims

¶48 As with wrongful death claims, the defendants do not argue that the discovery rule does not apply to survival claims. They argue that survival claims focus on discovery of an injury by the decedent, not by a third party, and therefore that the survival claims can accrue no later than death.

¶49 Contrary to a wrongful death action, "[t]he survival action . . . is not a new cause of action. It is rather the cause of action held by the decedent immediately before or at death, now transferred to his personal representative." Bartholomew, 293 Wis. 2d 38, ¶58 (quoting Keeton et al., supra, § 126, at 942-43). In other words, upon the death of the decedent, the decedent's personal representative "stands in the

21

shoes" of the decedent to pursue any claims the decedent may have had. See Merrill, 231 Wis. 2d at 554.

¶50 With respect to survival claims, the question facing the court is whether the personal representative similarly "stands in the shoes" of the decedent for purposes of the discovery rule. We conclude that it does.

¶51 This court's opinion in Hansen was broad in its language. It applied to all tort claims, including survival claims——a fact the defendants do not dispute——and it was grounded in public policy. We can discern no public policy reason to require survival claims to accrue before death or upon death but not after death that would outweigh the public policy reasons for permitting survival claims to accrue upon reasonable discovery after death. As Professor Dobbs states:

> The discovery rule is now familiar in personal injury statute of limitations cases. It logically applies as well in survival actions, which are merely continuations of the personal injury claim, although there is some dissent. In the survival context, the main question is whether suit was brought within the prescriptive period after the decedent discovered or should have discovered the facts considered relevant in the particular jurisdiction.

2 Dan B. Dobbs, The Law of Torts § 379, 528-29 (2d ed. 2011) (footnotes omitted).

¶52 The defendants point to two cases, Merrill, 231 Wis. 2d 546, and Lord v. Hubbell, Inc., 210 Wis. 2d 150, 563 N.W.2d 913 (Ct. App. 1997), which, they suggest, require a different result.

22

¶53 <u>Merrill</u> involved a single-car accident in which Shawn Merrill was seriously injured. Three days later, on November 26, 1994, Merrill succumbed to his injuries and died. On November 26, 1997——three years to the day after his death—— Merrill's estate filed suit against the driver of the vehicle, Joseph Jerrick, for pain and suffering and medical expenses incurred by Merrill during the three days following the accident. Jerrick moved for summary judgment, arguing that the statute of limitations expired three years after the date of the accident, not three years after the date of Merrill's death. The circuit court agreed and granted summary judgment.

¶54 The court of appeals reversed and remanded. <u>Id.</u> at 558. The court determined that there was an issue of material fact as to when Merrill's claim accrued because the record did not indicate "when Merrill, with reasonable diligence, would have discovered his injury, its cause and the defendants' identities." <u>Id.</u> at 553. Given the physical and mental handicaps suffered by Merrill in the accident, the court determined that it was unclear whether Merrill was aware of what happened. Thus, the court "conclude[d] that the estate's survival claim accrued when Merrill with reasonable diligence should have discovered his claim, here, no later than his date of death when his claim vested with the estate's personal representative." <u>Id.</u> at 557.

¶55 There are at least two explanations for the court's "no later than his date of death" language. First, Merrill's personal representative had all the information necessary for a

23

survival claim——the fact of the injury, the cause of the injury, and the identity of the defendant——at the time of Merrill's death. There was no issue about discovery after death and no need to opine about discovery after death. The issue in the case was whether "discovery" or accrual occurred before death or at death. The language of the case should be read in that light, since the next sentence reads: "The record leaves room for controversy concerning when a reasonable person with the same degree of mental and physical handicap and under the same or similar circumstances as Merrill should have discovered his injury, its cause, its nature and the defendants' identities." Id. at 557. Second, the author of the opinion, Chief Judge Thomas Cane, also authored the opinion in Miller v. Luther and cited the Miller opinion in Merrill. The Miller opinion, dated 1992, stated that "a wrongful death action accrues at the time of the decedent's death." Miller, 170 Wis. 2d at 436 (citing Terbush, 217 Wis. 2d at 640). The language in Merrill may simply echo the writing in Miller, restating a rule that has become defunct.

¶56 For all practical purposes, Terbush was overruled by Hansen and Borello, and it is expressly overruled here.

¶57 The second case is Lord. The defendants claim that Lord proves that the focus in a survival claim is on the circumstances of the decedent, rather than on the circumstances of the third party who eventually brings the claim.

¶58 Lord did not involve a determination of when a claim accrued. The case involved plaintiffs who were the minor

24

children of a decedent who was electrocuted while at work. Lord, 210 Wis. 2d at 155. The plaintiffs argued that the survival claim was tolled until they reached the age of majority; the court of appeals disagreed. There was no discussion of when the claim accrued in Lord——the accrual of the claim was undisputed——so Lord does not assist us in determining when a claim might have accrued in this case.

¶59 The defendants also contend that because the plaintiffs are bringing suit in this case as special administrators, not personal representatives, their personal knowledge of the discovery of the decedents' injuries is even less relevant. This argument misses the point. The question in this case is whether the survival claims could have accrued after the death of the decedents. Once those claims have accrued, it does not matter which party brings the claim, as long as that party has the authority to do so.

¶60 In other words, simply because a party brings a claim as a special administrator does not necessarily mean that a court will look for that party's discovery as special administrator; the reference point after the death of a decedent will need to be determined on a case-by-case basis. In many cases, the court will look to the personal representative's knowledge. In some cases, it might be appropriate to look to the special administrator's knowledge. Sometimes, the appropriate inquiry might even be into the knowledge of a party that is neither the personal representative nor the special administrator. The key is for the court to identify the party

25

whose knowledge is most relevant to meeting the goals set forth in <u>Hansen</u> and <u>Borello</u> and determine what that party's knowledge means in terms of the accrual of the claim. Once the claim has accrued, it may then be brought by whomever has the authority to bring it.

¶61 The defendants warn that a parade of horribles is sure to follow if courts look to third parties when applying the discovery rule. It is true that this application of the rule could permit the occasional stale claim to proceed. However, that risk is offset by the other protections in place to combat stale claims.

¶62 In sum, because the personal representative "stands in the decedent's shoes" for purposes of pursuing survival claims on behalf of the decedent's estate, the discovery rule makes it possible for those claims to accrue after the decedent's death. Survival claims accrue "on the date the injury is discovered or with reasonable diligence should be discovered" by either the decedent or an appropriate third party (often the decedent's personal representative), "whichever occurs first." <u>Hansen</u>, 113 Wis. 2d at 560.

¶63 We acknowledge that not all states apply the discovery rule to wrongful death and survival claims in the way it is applied here. However, we believe our decision reflects a clear trend in the cases and is fully supported by the decisions in <u>Hansen</u> and <u>Borello</u>.

D. Caveats for Plaintiffs

26

¶64 The broad applicability of the discovery rule does not guarantee that plaintiffs receive an advantage in tort cases. In most cases, plaintiffs will benefit from filing their claims sooner rather than later. We emphasize the following points.

¶65 First, the discovery rule requires reasonable diligence on the part of the injured party. This requirement applies in various ways to decedents, personal representatives, special administrators, and wrongful death beneficiaries. For example, if a decedent, with reasonable diligence, should have discovered his injury——including the identity of the defendant—— prior to his death, then any survival claims pursued on his behalf by his estate would have accrued prior to his death. Likewise, if the decedent's wrongful death beneficiary should have discovered the identity of the defendant shortly after the decedent's death, the beneficiary's actual knowledge will be irrelevant——the claim will accrue.

¶66 The burden is on the defendant to raise the statute of limitations as an affirmative defense. See Robinson v. Mount Sinai Med. Ctr., 137 Wis. 2d 1, 16-17, 402 N.W.2d 711 (1987). However, once the defense has been raised, the circuit court will need to determine whether the plaintiff has, in fact, satisfied the statute of limitations. See TJ Auto LLC v. Mr. Twist Holdings LLC, 2014 WI App 81, ¶¶14-15, 355 Wis. 2d 517, 851 N.W.2d 831. This may require the court to make a factual determination of when a claim accrued, including when the claim reasonably should have been discovered. As a practical matter, plaintiffs filing suit more than three years after a decedent's

27

death will often have to make a showing that the delay in their discovery of the claim was reasonable.

¶67 Second, a plaintiff has the burden of proving his case. That burden is not relaxed in older cases kept alive by the discovery rule. A plaintiff will often find that proving his case has become more difficult because time has passed.

¶68 Third, the fact that the discovery rule is grounded in public policy considerations means that its application in a specific case may be weighed against competing public policy considerations. In the past, this court has identified six public policy considerations that courts may use to limit liability:

> (1) the injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance for recovery would enter a field that has no sensible or just stopping point.

Cole v. Hubanks, 2004 WI 74, ¶8, 272 Wis. 2d 539, 681 N.W.2d 147 (quoting Becker v. State Farm Mut. Auto. Ins. Co., 141 Wis. 2d 804, 817-18, 416 N.W.2d 906 (Ct. App. 1987)).

¶69 The fact that survival and wrongful death claims can accrue after death does not mean that those claims can always be pursued after an extended period of time. The discovery rule notwithstanding, requiring alleged tortfeasors to defend against very old claims may sometimes "place too unreasonable a burden"

28

on those parties.  See id.  The discovery rule does not state that such claims will always proceed; it is up to the courts to balance the equities in such cases.

¶70 We make no determination as to the balance of the equities in this case.  The record is not sufficiently developed for us to determine whether the defendants should have to defend against these claims.  Rather, our decision is simply that it is possible that the plaintiffs' claims accrued after the deaths of the decedents.

E. Summary Disposition and Constitutional Claims

¶71 Finally, the defendants contend that the court of appeals' decision to summarily reverse the circuit court's grant of summary judgment violated their constitutional rights.  The defendants' argument on this point does not seem to be fully developed, so we address it only briefly.

¶72 As the plaintiffs point out, the defendants' argument presupposes that the court of appeals was incorrect.  Because the court of appeals was correct that the circuit court used the wrong legal standard in its application of the discovery rule to the facts of this case, the only question is whether the defendants' constitutional rights were somehow violated by the case being reversed summarily.

¶73 The court of appeals may dispose of a case summarily

by order if the panel unanimously agrees on the decision; unanimously agrees the issues involve no more than the application of well-settled rules of law or the issues are decided on the basis of unquestioned and controlling precedent or the issues relate to sufficiency of evidence or trial court discretion and

29

> the record clearly shows sufficient evidence or no abuse of discretion; and the issues may be resolved by merely stating the reasons for the decision without a detailed analysis.

Wis. Ct. App. IOP VI-1 (Nov. 30, 2009).

¶74 In this case, the court of appeals determined that its recent decision in Beaver, which presented the same legal question and nearly identical facts, made this case appropriate for summary disposition. See Christ, No. 2012AP1493, at 3. Given the court's recent ruling in Beaver, we see no reason why this case was not appropriate for summary disposition. Accordingly, we hold that summary disposition did not violate the defendants' constitutional rights.

## IV. CONCLUSION

¶75 We hold that the discovery rule permits the accrual of both survival claims and wrongful death claims to occur after the date of the decedent's death. In the absence of a legislatively created rule to the contrary, these claims accrue when there is a "claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." Emp'rs Ins. of Wausau, 154 Wis. 2d at 231 (citation omitted). These criteria are not met "until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." Borello, 130 Wis. 2d at 411.

¶76 In the circumstances of this case, the applicable statute of limitations began to run when the survival claims and

wrongful death claims were discovered, provided that the plaintiffs are able to show that they exercised reasonable diligence in investigating and discovering their claims.

¶77 Given the procedural posture of this case, the plaintiffs have not yet demonstrated that their claims accrued less than three years before they filed their complaint. Accordingly, we affirm the court of appeals and remand to the circuit court for a determination as to whether the plaintiffs have satisfied the statute of limitations under our accrual rule.

*By the Court.*—The decision of the court of appeals is affirmed.

¶78 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting).* Wrongful death is a statutory claim that arises upon death and does not belong to the deceased, but rather, to the statutory beneficiaries. It is a claim for loss of support and companionship, which the deceased person would have provided if he or she had lived. Because of the nature of the claim, death is always the "injury" in a wrongful death action. Stated otherwise, it is this injury, i.e., death, that causes the damages for loss of support and companionship that the statutory beneficiaries sustain.[1] Day v. Allstate Indem. Co., 2011 WI 24, ¶62, 332 Wis. 2d 571, 798 N.W.2d 199. Therefore, in regard to an action for wrongful death, the "injury" that causes damages is "discovered" upon the decedent's death. Terbush v. Boyle, 217 Wis. 636, 640, 259 N.W. 859 (1935) (explaining that an "action for wrongful death accrues at time of death").

¶79 I also conclude that death vests a survival action, which compensates the decedent for the pain, suffering and financial loss he or she suffered prior to death, in the decedent's estate. Upon vesting, both the claim and any recovery belong to the estate, which has three years to proceed thereon. Estate of Merrill v. Jerrick, 231 Wis. 2d 546, 557, 605 N.W.2d 645 (Ct. App. 1999) (concluding that "under the

---

[1] Wisconsin Stat. § 895.04 (2005-06) lists potential claimants in a wrongful death action. The 2013-14 version of the statutes lists the same potential claimants. All subsequent references to the Wisconsin Statutes are to the 2005-06 version unless otherwise noted.

1

discovery rule" limitations period began to run no later than the date of death whereon the survival claim vested in the personal representative of decedent's estate).

¶80 This has been the law in Wisconsin for more than 80 years, which Hansen v. A.H. Robins Co., 113 Wis. 2d 550, 335 N.W.2d 578 (1983), did not change. Because the majority opinion fails to acknowledge the import of the differences in the two types of claims now before us and gives no reason why actions arising under Wis. Stat. § 895.03 and Wis. Stat. § 895.01 should not accrue on the date of death as they have in the past, and in so doing substitutes complexity and uncertainty for well-settled law, I respectfully dissent.

## I.  BACKGROUND

¶81 The decedents, upon whom all claims before us are based, were former employees of Uniroyal Inc. They died, on average, seven years before the July 13, 2006 complaint was filed.[2]  Plaintiffs claimed decedents' deaths were caused by benzene-containing petroleum products employed in the workplace. They asserted wrongful death and survival claims. The circuit court dismissed all claims based on the three-year bar set out in Wis. Stat. § 893.54(2), as interpreted in Merrill and Miller v. Luther, 170 Wis. 2d 429, 489 N.W.2d 651 (Ct. App. 1992). The

---

[2] Mary Henneman died June 19, 1995; Mae Heath died June 1, 1996; William Beaulieu died July 17, 1997; Gary Radosevich died February 26, 1999; Sharon Clark died May 17, 2001; Gail Christ died December 15, 2002; and Victor Grosvold died December 30, 2003.

2

court of appeals summarily reversed and defendants petitioned for review, which we granted.

## II. DISCUSSION

### A. Standard of Review

¶82 This case involves interpreting and applying Wis. Stat. § 893.04, in regard to Wis. Stat. § 895.03, the wrongful death statute and Wis. Stat. § 895.01(1)(am)7., the survival action statute. Statutory interpretation and application present questions of law that we independently review, while benefitting from the decisions of the circuit court and the court of appeals. Marder v. Bd. of Regents of the Univ. of Wis. Sys., 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110.

### B. Statutory Interpretation

¶83 We interpret a statute to determine its meaning. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. In so doing, we "assume that the legislature's intent is expressed in the statutory language" it chose. Id., ¶44. Where statutes have been interpreted by Wisconsin appellate courts in the past, those interpretations affect subsequent interpretations. Adams v. Northland Equip. Co., 2014 WI 79, ¶30, 356 Wis. 2d 529, 850 N.W.2d 272 (concluding that prior interpretations of a statute under consideration assist our current interpretation of the same statutes). This principle is especially relevant when the claim is based on a statute that is to be interpreted and applied in the case before us and the legislature has not amended the statute in a way that would discount our

3

interpretation. <u>See</u> <u>Wenke v. Gehl Co.</u>, 2004 WI 103, ¶35, 274 Wis. 2d 220, 682 N.W.2d 405 (concluding that legislative acquiescence subsequent to judicial interpretation of a statute is "a presumption to aid in statutory construction").

### C. Death-Related Actions

¶84 Actions "to recover damages for death caused by the wrongful act, neglect or default of another" are barred if not commenced within three years. Wis. Stat. § 893.54(2). Wisconsin Stat. § 893.04 underlies the dispute before us because it determines when that three-year period set out in § 893.54(2) begins to run for wrongful death claims, Wis. Stat. § 895.04, and survival actions, Wis. Stat. § 895.01. Section 893.04 provides:

> Computation of period within which action may be commenced. Unless otherwise specifically prescribed by law, a period of limitation within which an action may be commenced is computed from the time that the cause of action accrues until the action is commenced.

It is the phrase, "cause of action accrues," from § 893.04 that is our central concern because it determines when the three year statute of limitations will bar commencement of wrongful death and survival claims.

### 1. Wrongful death claims

¶85 Wrongful death is not a claim that existed at common law; it was created by statute. <u>Force v. Am. Family Mut. Ins. Co.</u>, 2014 WI 82, ¶32, 356 Wis. 2d 582, 850 N.W.2d 866 (citing <u>Cogger v. Trudell</u>, 35 Wis. 2d 350, 353, 151 N.W.2d 146 (1967)). Therefore, our interpretation of Wis. Stat. § 893.04, setting the period for commencement of an action, and Wis. Stat.

4

§ 895.03, the wrongful death statute, are interpretations of legislative creations.

¶86 However, numerous Wisconsin appellate courts have addressed wrongful death claims and the period of time during which they may be commenced. For example, more than 80 years ago, we discussed a wrongful death claim in Terbush. There, we decided whether Terbush's[3] wrongful death claim against Boyle was barred by the then operative two-year statute of limitations. Terbush, 217 Wis. at 637. To answer that question, we examined Wis. Stat. § 330.15 (1931),[4] which described the period during which a wrongful death claim could be commenced as beginning when "the cause of action has accrued." Id.

¶87 We posited the question to be answered as, "When did the cause of action accrue (1) on the date of injury, (2) on the date of [] death, or (3) when the administrator was appointed?" Id. We explained that "'at the death of decedent, there are real parties in interest who may procure the action to be brought,'" id. at 640 (citation omitted), and that the statutory term, "accrued," "evidences an intention to set a definite limit to the period within which actions may be commenced." Id. We then concluded that an "action for wrongful death accrues at

---

[3] Terbush was the administrator of the estate of William Haude. Terbush v. Boyle, 217 Wis. 636, 636, 259 N.W. 859 (1935).

[4] Wisconsin Stat. § 330.15 (1931) is a predecessor statute to Wis. Stat. § 893.04.

5

time of death and is barred if not commenced within two years from that time." Id.

¶88 Many years later in Lord v. Hubbell, Inc., 210 Wis. 2d 150, 563 N.W.2d 913 (Ct. App. 1997), Judge Margaret Vergeront, writing for the court of appeals, thoughtfully discussed actions for wrongful death. Lord explained that a "wrongful death claim belongs to the persons named in the statute [Wis. Stat. § 895.04] who have suffered pecuniary loss and loss of society and companionship because of [a] person's death." Id. at 165.

¶89 It is important to understand that "wrongful death beneficiaries seek recovery not for the injury suffered by the deceased, but rather, for the loss sustained to the beneficiaries because of the death." Day, 332 Wis. 2d 571, ¶62 (internal quotation marks and citation omitted). Stated otherwise, it is the statutory beneficiaries who claim to be injured in a wrongful death claim, not the person who has died. Id. Therefore, it is death of the decedent that is the injury that causes beneficiaries to suffer damages for which recovery may be available in a wrongful death action. See Weiss v. Regent Props., Ltd., 118 Wis. 2d 225, 230, 346 N.W.2d 766 (1984).

¶90 A wrongful death claim is derivative in the sense that if the decedent did not have an actionable claim that his death was "wrongful," i.e., tortious, a statutory beneficiary cannot bring a subsequent wrongful death action. Miller, 170 Wis. 2d at 437. For example, if the statute of limitations on a decedent's personal injury claim had expired before decedent's

6

death, a claim for wrongful death will not lie. Lord, 210 Wis. 2d at 166. It is this derivative nature of a wrongful death claim that has led courts to conclude that an action for wrongful death accrues no later than the death of the decedent. Furthermore, whether the decedent knew who was a cause of his death does not affect the accrual of a beneficiary's wrongful death claim because that claim arises, i.e., comes into being, at the decedent's death. It is a new claim that was not in existence before decedent's death. Miller, 170 Wis. 2d at 435-36; see Lord, 210 Wis. 2d at 166.

¶91 Wisconsin Stat. § 893.04 and cases interpreting when an action "accrues," in the context of wrongful death claims, require dismissal of plaintiffs' wrongful death claims herein. Let me explain. First, the injured party is the statutory beneficiary in a wrongful death claim, not the deceased person. Day, 332 Wis. 2d 571, ¶62. Wrongful death is a new cause of action that arises upon death. Id. As Lord determined, those persons named in the wrongful death statute "suffered pecuniary loss and loss of society and companionship because of [a] person's death." Lord, 210 Wis. 2d at 165. This is so because death of a person deprived the beneficiaries of the financial support and companionship of that person. Second, it is a person's death that is the injury sustained by a wrongful death beneficiary. Day, 332 Wis. 2d 571, ¶62 (explaining that it is the decedent's death that is the injury to the beneficiary).

¶92 Third, each plaintiff's claim is caused by a decedent's death. Weiss, 118 Wis. 2d at 230. Stated otherwise,

7

without death of a person, there is no possibility of a wrongful death claim. Therefore, at the death of a person, the injury and its cause of damages to statutory beneficiaries are known to wrongful death plaintiffs.[5] When an injury and its cause are known, a tort claim has been discovered. That is, the claim has accrued. Miller, 170 Wis. 2d at 436.

¶93 My conclusion is consistent with Hansen, in which we first declared the discovery rule that affected when common law tort claims accrue. We reasoned that "there are three points in time when a tort claim may be said to accrue: (1) when negligence occurs, (2) when a resulting injury is sustained, and (3) when the injury is discovered." Id. at 554. In explaining the discovery rule, we said, "[u]nder this rule, a claim does not accrue until the injury is discovered or in the exercise of reasonable diligence should be discovered." Id. at 556. We concluded that under the discovery rule, "tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." Id. at 560.

¶94 Until today, Wisconsin appellate courts have concluded that a claim for wrongful death accrues no later than decedent's death. Holifield v. Setco Indus., Inc., 42 Wis. 2d 750, 757, 168 N.W.2d 177 (1969) (concluding that an action for wrongful

---

[5] If a potential beneficiary of a wrongful death claim is a minor child, the period of limitations in which to bring the action may be tolled by Wis. Stat. § 893.18(2)(a). Section 893.18(2)(a) does not apply to plaintiffs in this action.

8

death pursuant to Wis. Stat. § 895.03 must be brought within three years of death). Our conclusion in Holifield, which preceded Hansen, remains the operative law as Miller, which was decided subsequent to Hansen, demonstrates. Miller, 170 Wis. 2d at 436 (explaining that a wrongful death action brought under § 895.03 "accrues at the time of the decedent's death").

¶95 In the claims now before us, the injury, which is the decedent's death, was discovered more than three years before this lawsuit was filed. Therefore, consistent with Hansen, all of the wrongful death claims accrued more than three years before this lawsuit was filed and they must be dismissed. Id. Hansen did not overrule Terbush, Holifield and other cases that have followed their conclusions; but rather, Hansen's reasoning is consistent with our prior decisions in regard to when a claim for wrongful death accrues.

¶96 Appellate courts have established a clear, easy to follow rule that the date on which a wrongful death action accrues is the date of death. That rule is not dependent on which Wis. Stat. § 895.04 plaintiff filed the wrongful death action or whether his or her investigation of the personal injury of the decedent was reasonable. The majority opinion errs because it misperceives the nature of wrongful death claims and, relying on public policy,[6] it conflates discovery of a decedent's claim for personal injury with the statutory claim of wrongful death that arises upon death. In so doing, the

---

[6] Majority op., ¶32.

9

majority opinion substitutes complexity and uncertainty for what has been well-settled law.

## 2. Survival claims

¶97 As with claims for wrongful death, survival claims have received frequent court attention. Survival claims are so named because they belonged to the deceased person and they survive his or her death.[7] Wangen v. Ford Motor Co., 97 Wis. 2d 260, 310-11, 294 N.W.2d 437 (1980). Survival claims seek compensation for personal injury damages due to the pain and suffering and financial loss the deceased endured before death. Merrill, 231 Wis. 2d at 549. Once decedent's estate is vested with decedent's survival claim, both the cause of action and the recovery belong to the estate. Day, 332 Wis. 2d 571, ¶61. Accordingly, an estate cannot remain inactive and thereby preserve its claim. The estate has an obligation to investigate circumstances leading to the decedent's death. See Korkow v. Gen. Cas. Co. of Wis., 117 Wis. 2d 187, 198, 344 N.W.2d 108 (1984) (explaining that the "purpose of statutes of limitations is to ensure prompt litigation of claims and to protect defendants from fraudulent or stale claims brought after memories have faded or evidence has been lost.").

¶98 Merrill addressed the question of when a survival claim accrues in light of the discovery rule announced in Hansen. Merrill, 231 Wis. 2d at 551-52. Jerrick argued that the claim accrued at the time of the auto accident when the

_____

[7] In contrast, wrongful death claims belong to the beneficiaries identified in Wis. Stat. § 895.04.

tortfeasor was known. Id. at 553. Merrill countered that if the injured person were in a coma, he might not know who injured him. Id. at 556.

¶99 The court did not address the circumstance of an injured person in a coma. Instead, the court reasoned that the personal representative who was proceeding on Merrill's survival claim "stands in the shoes of the decedent, and the estate is entitled only to what the decedent would have had if the decedent were living." Id. at 554 (internal quotation marks omitted). Therefore, once the survival action vests in the personal representative, a survival action accrues and a lawsuit to bring forward that claim must be commenced within three years. Id. at 557; Lord, 210 Wis. 2d at 169.

¶100 Here, all the survival claims vested in the decedents' estates more than three years before the lawsuit was filed. Because the estate took no action within three years, Wis. Stat. § 893.54(2) bars these survival actions. Lord, 210 Wis. 2d at 169. This well-settled rule of law has provided certainty and has encouraged prompt settling of claims and has facilitated closing of estates. The majority errs when it substitutes complexity and uncertainty for well-settled law.

### III. CONCLUSION

¶101 Wrongful death is a statutory claim that arises upon death and does not belong to the deceased, but rather to the statutory beneficiaries. It is a claim for loss of support and companionship, which the deceased person would have provided if he or she had lived. Because of the nature of the claim, death

11

is always the "injury" in a wrongful death action. Stated otherwise, it is this injury, i.e., death, that causes the damages for loss of support and companionship that the statutory beneficiaries sustain.[8] Day, 332 Wis. 2d 571, ¶62. Therefore, in regard to an action for wrongful death, the "injury" that causes damages is "discovered" upon the decedent's death. Terbush, 217 Wis. at 640 (explaining that an "action for wrongful death accrues at time of death").

¶102 I also conclude that death vests a survival action, which compensates the decedent for pain, suffering and financial loss he or she sustained prior to death, in the decedent's estate. Upon vesting, both the claim and any recovery belong to the estate, which has three years to proceed thereon. Merrill, 231 Wis. 2d at 557 (concluding that "under the discovery rule" limitations period began to run no later than the date of death whereon the survival claim vested in the personal representative of decedent's estate).

¶103 This has been the law in Wisconsin for more than 80 years, which Hansen did not change. Because the majority opinion fails to acknowledge the import of the differences in the two types of claims now before us and gives no reason why actions arising under Wis. Stat. § 895.03 and Wis. Stat. § 895.01 should not accrue on the date of death as they have in the past, and in so doing substitutes complexity and uncertainty for well-settled law, I respectfully dissent.

---

[8] Wisconsin Stat. § 895.04 lists who may be a claimant in a wrongful death action.

¶104 I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this dissent.